IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:11CV86-RLV
(5:03CR50-RLV-CH-1)

| | |
|---|---|
| JAMADE BARSON JONES, | ) |
| Petitioner, | ) ) ) |
| vs. | ) **ORDER** |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion for Summary Judgment, (Doc. No. 7).

**I. BACKGROUND**

**A. Offense Conduct and Procedural Background**

In July of 2003, Shorty Pacheco, an individual from Asheboro, North Carolina, then under investigation, reported to agents that Jamade Barson Jones, a/k/a Jamade Derson Jones, "was attempting to obtain large quantities of cocaine from him." (Criminal Case No. 5:03cr50, Doc. No. 77 at 21-22: Sentencing Transcript). On July 30, 2003, Petitioner and Pacheco met in Greensboro, with the understanding that Petitioner would buy one kilogram of cocaine from Pacheco. (Id., Doc. No. 77 at 22). Agents conducted surveillance of the meeting, both through audio and a global positioning system placed on the bottom of Pacheco's automobile. (Id., Doc. No. 77 at 22-23). During the recorded conversation, the parties discussed a price of $22,000 for the kilogram of cocaine, and Petitioner told Pacheco that he wanted to purchase four or five

1

kilograms of cocaine at a time, stating that he had contacts from Philadelphia, New York, New Jersey, and South Carolina. (Id., Doc. No. 77 at 23; Doc. No. 67 at 4: PSR). Petitioner told Pacheco, specifically, that he would like to get five kilograms for $21,000 each, for a total price of $105,000, but Petitioner stated that he would buy one kilogram first, as a sample. (Id., Doc. No. 77 at 23-24).

At this point in the conversation, Petitioner's cousin, Asiatic Robinson, arrived and Petitioner, Robinson, and Pacheco got into Pacheco's car and traveled to Iredell County in order to retrieve the kilogram of cocaine that Pacheco was to supply. (Id., Doc. No. 77 at 25; Doc. No. 67 at 4). During the trip, Petitioner told Pacheco that if he could get it at a cheap price, he could move 15 to 20 kilograms of cocaine a week. (Id., Doc. No. 77 at 25). Petitioner also asked Pacheco if Pacheco thought he could put a stash compartment in his BMW. (Id., Doc. No. 77 at 26; Doc. No. 67 at 4). The parties also discussed oil-based cocaine and whether the cocaine Pacheco was supplying was coming from Mexico. (Id., Doc. No. 77 at 26; Doc. No. 67 at 4).

Finally, with respect to the parties' conversation, in response to Pacheco's question as to whether Greensboro was a gold mine, Petitioner responded "that it was not just Greensboro," but Petitioner and Robinson who were the gold mine, "because they had people at different spots." (Id., Doc. No. 77 at 26-27). After the group passed into Iredell County, they saw two marked Iredell County Sheriff's Department patrol cars on Interstate 40, prompting Petitioner to hand $10,000 to Pacheco, stating that he had $22,000 on him and, if they were stopped, he did not want all of that money on him. (Id., Doc. No. 77 at 27; Doc. No. 67 at 5). The sheriff's department officers then stopped the automobile, and officers recovered over $12,000 from Petitioner and found another $10,000 under a seat. (Id.). Petitioner and Robinson were then arrested. (Id.).

2

Based on the above facts, Petitioner and Robinson were indicted by the Grand Jury for the Western District of North Carolina on November 18, 2003, and charged with conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846. (Criminal Case No. 5:03cr50, Doc. No. 3: Sealed Indictment). Petitioner ultimately agreed to plead guilty to the charge, entering into a plea agreement with the Government, and this Court, Magistrate Judge Carl Horn, III, presiding, conducted a plea hearing and colloquy in accordance with Federal Rule of Criminal Procedure 11 on March 4, 2004, at the conclusion of which Judge Horn found Petitioner's plea to be both knowing and voluntary. (Id., Doc. No. 32: Plea Agreement; Doc. No. 33: Entry and Acceptance of Guilty Plea). Also at the conclusion of the Rule 11 colloquy, and upon a motion by Petitioner and with the consent of the Government, Judge Horn agreed to Petitioner's release on bond.

Petitioner absconded from pretrial supervision on or about September 13, 2004, and later turned up after his arrest on May 8, 2006, in New York City on drug-trafficking charges. (Id., Doc. No. 67 at 5). He was transferred to North Carolina after United States Marshals found him at the Rikers Island Correctional Facility on November 15, 2007. (Id. at 5-6). Although initially prepared in the fall of 2004, the probation office prepared its final Presentence Report in preparation for Petitioner's sentencing hearing on December 5, 2008. (Id., Doc. No. 67). In the report, the probation officer calculated a total offense level of 28, beginning with a base offense level of 26, consistent with the parties' drug-quantity stipulation in the plea agreement, and adding a two-level enhancement for obstruction of justice. (Id. at 6-7). Combined with a criminal history category of V, the probation officer calculated a Sentencing Guidelines range of imprisonment of between 130 and 162 months. (Id. at 16).

Petitioner filed three motions to continue his sentencing hearing, on April 9, 2008; June

30, 2008; and November 24, 2008.  See (Id., Doc. Nos. 60; 62; 65, and Oral Motion docketed 6/30/08).  Petitioner also made an oral, pro se motion to withdraw his guilty plea on June 30, 2008, in response to which the Court requested a written motion.  (Id., Docket Entry 6/30/08).  Although no written motion was filed, the Government filed a response in opposition to the motion to withdraw guilty plea on July 8, 2008.  (Id., Doc. No. 64).  Several months later, on October 8, 2008, the Court permitted Petitioner's retained counsel to withdraw, appointing new counsel in his place.

This Court conducted Petitioner's sentencing hearing on January 5, 2009.  (Id., Doc. No. 77: Sentencing Hrg. Tr.).  After resolving Petitioner's motions for a continuance and to withdraw his plea, the Government presented the case agent's testimony to establish a factual basis supporting Petitioner's guilty plea.  (Id. at 20-34).  The Court then found an adequate factual basis on the strength of that testimony, id. at 35, and sentenced Petitioner to 162 months' imprisonment, at the high end of the advisory Guidelines range of imprisonment, id. at 53.

Petitioner appealed, challenging the denial of his motion to continue the sentencing hearing, the denial of his motion to withdraw his guilty plea, and the adequacy of the explanation of the sentence imposed by the district court.  The Fourth Circuit affirmed this Court's judgment on January 21, 2011.  United States v. Jones, 408 Fed. App'x 748 (4th Cir. 2011).  Petitioner did not file a petition for writ of certiorari.  On June 27, 2011, Petitioner filed the instant motion to vacate his conviction and sentence under 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel because counsel failed to move to withdraw Petitioner's guilty plea and counsel failed to object to the court's failure to state a reason for imposing Petitioner's sentence as required under 18 U.S.C. § 3553(c); and that Petitioner pled guilty on the basis of his trial counsel's mis-advice that, if he were to be found guilty following a jury trial, this Court would

4

have imposed a sentence of life imprisonment. (Doc. No. 1-1 at 3).

In order to respond to Petitioner's claims, the Government obtained an affidavit from Petitioner's trial counsel Edward D. Seltzer, in which Mr. Seltzer states that he informed Petitioner that, if found guilty, he would face a sentencing range of between ten years and life in prison, that Petitioner "at all times was aware of the advantages and disadvantages of proceeding to trial," and that "Petitioner was never told he would receive a life sentence" if he went to trial. (Doc. No. 6-1 at 1: Seltzer Aff.).

**B. Plea Agreement and Colloquy**

As set forth above, Petitioner entered into a plea agreement with the Government, pursuant to which he agreed to plead guilty to the drug conspiracy offense and the parties stipulated that the amount of cocaine powder that was known to, or reasonably foreseeable by, Petitioner was in excess of 500 grams but less than two kilograms. (Criminal Case No. 5:03cr50, Doc. No. 32 at 1-2: Plea Agreement). Petitioner acknowledged in the plea agreement that he faced a sentence of "no fewer than 10 years and no more than life imprisonment." (Id. at 1). Additionally, both parties agreed that "the sentence [would] be within 'the applicable guideline range' (U.S.S.G. § 5C1.1) and that neither party [would] seek a departure from that range." (Id. at 2). Finally, as part of the plea agreement and "in exchange for the concessions made by the United States," Petitioner waived "all rights to appeal or collaterally attack the sentence" or conviction, except for claims based on (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) sentencing errors, but only to the extent Petitioner challenged a finding as inconsistent with explicit stipulations in the agreement or the resolution of an unexpected issue that the district judge certified to be of an unusual nature requiring review by this Court. (Id. at 4-5).

During the plea colloquy conducted by Judge Horn, Petitioner affirmed that he

understood the charge to which he was pleading guilty, as well as the fact that the offense carried "a ten-year mandatory minimum sentence" and a maximum of life imprisonment. (Criminal Case No. 5:03cr50, Doc. No. 63 at 7-8: Rule 11 Colloquy Transcript). Petitioner also affirmed that he had discussed the Sentencing Guidelines and how they might apply and acknowledged that if the sentence was higher than he expected, he would "still be bound by [his] plea and . . . have no right to withdraw it." (Id. at 9-10). Petitioner also acknowledged that he was, in fact, guilty of the conspiracy offense, and that he understood that he was waiving his right to appeal, except on the three bases as stated in his plea agreement. (Id. at 12; 15; 22-23). During the colloquy, Government counsel summarized the terms of the plea agreement, including Petitioner's waiver of his right to appeal and his agreement not to seek a departure from the applicable Sentencing Guidelines range of imprisonment, and Petitioner affirmed that he understood and agreed with the terms as recited by counsel. (Id. at 17-19). When asked whether he was satisfied with the services of his attorney, Petitioner replied, "[y]es." (Id. at 25).

### C. Sentencing Hearing

At the beginning of the sentencing hearing, this Court noted that the sentencing hearing had earlier been continued so that Petitioner's new counsel could file a written motion to withdraw Petitioner's guilty plea, consistent with an oral motion made by Petitioner when represented by prior, retained counsel. (Criminal Case No. 5:03cr50, Doc. No. 77 at 2). In response, defense counsel noted that he had not filed the motion to withdraw Petitioner's plea, because of his understanding that "motions . . . of any kind need to be based on facts and those have to be facts that have a good faith basis." (Id. at 3). Stating that, in light of applicable law and the facts, he could "not see a non-frivolous basis for the motion," defense counsel reported to the court that he declined to file the motion to withdraw the guilty plea. (Id.). Petitioner responded that he had

requested that his prior attorney move to withdraw Petitioner's guilty plea and that "he didn't want to do it." (Id.).

Petitioner concluded, "I feel like nobody is trying to do what I ask them to do for the best interest of me. They just want to do what they want to do." (Id. at 3-4). According to Petitioner, he and his sister had been trying to find a new lawyer for Petitioner, because his current counsel would not do as Petitioner requested, but the lawyers they had contacted had stated that they could not take his case. (Id. at 4-5). Petitioner stated further that he wanted to find a lawyer who was "going to work for [him] and not work for the government." (Id. at 7). When the Court noted that Petitioner earlier had been represented by retained counsel and that, since the appointment of replacement counsel, he had had a "considerable amount of time to hire [his] own lawyer," Petitioner responded that he had fired earlier retained counsel "because he wasn't doing his job." (Id.). On the question of delay, the Court permitted Petitioner to present the testimony of his sister, Jamilia Humbert, who testified that she had spoken with two lawyers, both of whom declined the case, stating that it "ha[d] been going on for years and that they [didn't] want to intervene." (Id. at 12-13). In response to this testimony, Petitioner stated:

> She said she would hire a lawyer for me. That's what she said. And they won't let her hire one. That's what happened every time she call[ed] a lawyer. They said they called–I don't know who they called--where they're calling down there, but they won't let me get a new lawyer. I don't understand that. They're violating my rights, constitutional rights, you know.

(Id. at 13).

Following this evidence and colloquy, the Court found that "there [hadn't] been serious efforts to obtain an attorney that would justify a further continuance of this matter to allow additional time to obtain new counsel." (Id. at 16). The Court found further that "[Petitioner] ha[d] shown a pattern of attempting to delay the proceedings, and the court [saw] no justification

7

for allowing additional time for new counsel to be retained." (Id.). The Court then addressed Petitioner's pro se motion to withdraw his guilty plea, noting that the first factor in evaluating such a motion is whether the defendant's plea was knowing and voluntary. (Id. at 18). The Court found that Petitioner's statements at the Rule 11 hearing weighed in favor of the validity of the guilty plea and that the lengthy delay between the entry of the plea and the filing of the motion also weighed in favor of enforcing the plea. (Id. at 18-19). Next, the Court considered whether Petitioner had the benefit of the effective assistance of counsel, stating that, "to all appearances," he had received effective assistance of counsel, and found that the withdrawal of the plea would cause "substantial prejudice to the government." (Id. at 19). While the Court found that the factor of inconvenience to the Court was neutral and that, having never denied his guilt but having stated that he wanted a trial by jury, Petitioner was "equivocal," the Court found that, on balance, the factors weighed against permitting Petitioner to withdraw his guilty plea and denied Petitioner's motion. (Id.). After finding an adequate factual basis to support Petitioner's plea of guilty, the Court confirmed with Petitioner's counsel that he had reviewed the PSR with Petitioner, and while Petitioner complained that he had not "go[ne] over [his] motion of discovery with [his] attorney," he also affirmed that he had reviewed his PSR with counsel. (Id. at 35-36).

The Court then addressed Petitioner's objections to the denial of an offense-level reduction based on acceptance of responsibility and to the two-level obstruction of justice enhancement, both of which were recommended by the probation officer based on Petitioner's having absconded supervision and committed new criminal offenses. See (Criminal Case No. 5:03cr50, Doc. No. 67 at 5-6). Petitioner's counsel then argued that Petitioner absconded because he believed he would receive a sentence of 63 months, based on cooperation with the

8

Government, and when that did not go well, he left. (Id., Doc. No. 77 at 39-41).

After hearing from the Government, the Court found, by a preponderance of the evidence, that Petitioner obstructed justice and failed to accept responsibility and that the probation officer correctly calculated an applicable Sentencing Guidelines range of imprisonment of between 130 and 162 months. (Id. at 45). Petitioner then argued in favor of a downward variance sentence, requesting a sentence of 120 months based on misunderstandings by Petitioner and the argument that a 120-month sentence would satisfy the objectives of 18 U.S.C. § 3553(a) by "let[ting] [Petitioner] know and let[ting] folks know in the future that they need to do what they say they're going to do." (Id. at 50-51). After hearing from Petitioner and from Government counsel, the Court stated that "[p]ursuant to the Sentencing Reform Act of 1984, the Booker case and 18 U.S.C. § 3553(a)," the Court would impose a sentence of 162 months' imprisonment, at the top of the applicable Guidelines range. (Id. at 53).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### B. Trial counsel's failure to file a motion to withdraw Petitioner's guilty plea.

Petitioner's first claim of ineffective assistance of counsel is that his trial counsel should have formally moved to withdraw Petitioner's guilty plea. As set forth above, notwithstanding Petitioner's requests, neither Mr. Seltzer, who represented Petitioner before his sentencing proceeding, nor Peter Adolf, who represented Petitioner thereafter, filed a motion to withdraw Petitioner's plea, with Mr. Adolf explaining during Petitioner's sentencing hearing that he could "not see a non-frivolous basis for the motion." (Criminal Case No. 5:03cr50, Doc. No. 77 at 3).

Petitioner argues, however, that because the plea had been accepted only by Magistrate Judge Horn and not by a district judge, he would have been able to withdraw his guilty plea for any or no reason.

Petitioner's argument is foreclosed by the Fourth Circuit's decision in United States v. Benton, 523 F.3d 424 (4th Cir. 2008). In Benton, the Fourth Circuit held that the acceptance of a defendant's guilty plea by a magistrate judge is binding and sufficient to trigger the requirement that the court not permit the withdrawal of that plea, unless the defendant can show a fair and just reason. Id. at 433; see also FED. R. CRIM. P. 11(d)(2)(B). Here, this Court applied the correct standard in ruling on Petitioner's pro se motion to withdraw his guilty plea. Because Petitioner cannot show that any action on his behalf by either of his trial counsel would have resulted in this Court allowing him to withdraw his plea under the applicable standard, he has not shown either deficient performance or prejudice.

**C. Petitioner's contention that trial counsel should have objected to the adequacy of this Court's explanation of sentence.**

Petitioner next argues that trial counsel should have filed either a motion to correct the sentence, or trial counsel should have objected to the sentence when this Court pronounced it, because the Court failed to explain its reasons for the sentence imposed and failed to provide a statement of its reasons. Under the post-Booker advisory Sentencing Guidelines regime, it is clear that to enable meaningful appellate review, the sentencing court must make an individualized assessment based on the facts presented and "must 'state in open court' the particular reasons supporting its chosen sentence." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (quoting 18 U.S.C. § 3553(c)). In making the individualized assessment, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the

11

case before it." Carter, 564 F.3d at 328; see also Gall v. United States, 552 U.S. 38 (2007). This "individualized treatment is necessary 'to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" Id. (quoting Gall, 552 U.S. at 52).

With respect to the importance of a district court's explanation of sentence, the Fourth Circuit has recognized that "[a]n adequate explanation of [the court's] rationale not only 'allows for meaningful appellate review,' it also 'promotes the perception of fair sentencing.'" United States v. Llamas, 599 F.3d 381, 388 (4th Cir. 2010) (quoting Carter, 564 F.3d at 328). A sentencing court "need not 'robotically tick through § 3553(a)'s every subsection,'" Carter, 564 F.3d at 329 (quoting United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006)), nor must the assessment be "elaborate or lengthy," id. at 330. But, the explanation must "provide a rationale tailored to the particular case at hand and adequate to permit 'meaningful appellate review.'" Id. (quoting Gall, 552 U.S. at 50). Here, the Court heard argument from Government and defense counsel and from Petitioner before pronouncing Petitioner's sentence, but the Court did not provide the explanation of sentence required by the Fourth Circuit's Carter decision. Even if defense counsel had objected to the adequacy of the Court's explanation, however, Petitioner has not shown there is a reasonable probability that this Court would have imposed a lower sentence. Thus, even assuming that counsel's performance was deficient, Petitioner cannot meet the prejudice prong of Strickland. Furthermore, Petitioner raised this claim on appeal, but the Fourth Circuit dismissed it as encompassed within his appeal waiver. In sum, this part of Petitioner's ineffective assistance of counsel claim is without merit.

**D. Petitioner's contention that counsel advised him incorrectly as to the sentence he faced.**

Although not identified as a separate claim, Petitioner also asserts in his petition that "[d]efense counsel advised that, if petitioner were to be found guilty by a jury, the Court would impose a sentence of Life imprisonment" and that "[w]ere it not for counsel's advice concerning the applicable penalties, petitioner would have proceeded to trial." (Doc. No. 1-1 at 3). As set forth above, Petitioner's trial counsel has directly refuted this claim, stating unequivocally that he advised Petitioner that he faced a sentence of between ten years and life and that he never advised Petitioner that this Court would sentence him to life in prison if he went to trial. Additionally, the record establishes that Petitioner acknowledged in the plea agreement and during the Rule 11 colloquy that he understood that he faced a possible range of punishment of between ten years and life. In sum, this part of Petitioner's ineffective assistance of counsel claim also fails.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the Section 2255 petition and grant Respondent's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Section 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

Although not identified as a separate claim, Petitioner also asserts in his petition that "[d]efense counsel advised that, if petitioner were to be found guilty by a jury, the Court would impose a sentence of Life imprisonment" and that "[w]ere it not for counsel's advice concerning the applicable penalties, petitioner would have proceeded to trial." (Doc. No. 1-1 at 3). As set forth above, Petitioner's trial counsel has directly refuted this claim, stating unequivocally that he advised Petitioner that he faced a sentence of between ten years and life and that he never advised Petitioner that this Court would sentence him to life in prison if he went to trial. Additionally, the record establishes that Petitioner acknowledged in the plea agreement and during the Rule 11 colloquy that he understood that he faced a possible range of punishment of between ten years and life. In sum, this part of Petitioner's ineffective assistance of counsel claim also fails.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the Section 2255 petition and grant Respondent's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Section 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: September 17, 2013

Richard L. Voorhees
United States District Judge